1    J. BLAKE CUNNINGHAM (Cal. Bar No. 261559)
       bcunningham@kslaw.com
2    KING & SPALDING LLP
     50 California Street, Suite 3300
3    San Francisco, CA 94111
     Telephone: (415) 318-1200
4    Facsimile: (415) 318-1300

5    JEFFREY M. TELEP (*pro hac vice* application to be submitted)
       jtelep@kslaw.com
6    J. MICHAEL TAYLOR (*pro hac vice* application to be submitted)
       jmtaylor@kslaw.com
7    BRIAN HILL (*pro hac vice* application to be submitted)
       bhill@kslaw.com
8    KING & SPALDING LLP
     1700 Pennsylvania Avenue, NW, 2nd Floor
9    Washington, DC 20006-4707
     Telephone: (202) 737-0500
10   Facsimile: (202) 626-3737

11   CHRISTOPHER C. CAMPBELL (*pro hac vice* application to be submitted)
       ccampbell@kslaw.com
12   KING & SPALDING LLP
     1650 Tysons Blvd, Suite 400
13   McLean, VA 22102
     Telephone: (703) 245-1000
14   Facsimile: (703) 245-9900

15   Attorneys for Plaintiff
     CRITERION TECHNOLOGY, INC.
16
     [*Additional Counsel Listed on Signature
17   Page*]

18                    **UNITED STATES DISTRICT COURT**

19                   **NORTHERN DISTRICT OF CALIFORNIA**

20                         **SAN JOSE DIVISION**

21   CRITERION TECHNOLOGY, INC.                 Case No. 5:21-cv-5101

22              Plaintiff,                       **COMPLAINT FOR
                                                 MISAPPROPRIATION OF TRADE
23         v.                                    SECRETS, BREACH OF CONTRACT,
                                                 AND VIOLATIONS OF CALIFORNIA
24   VELODYNE LIDAR USA, INC. AND                BUSINESS & PROFESSIONS CODE §
     FUJIAN FRAN OPTICS CO., LTD.                17200, ET SEQ**
25
                Defendants.                      **JURY DEMAND**
26

27

28

_____
COMPLAINT                                              Case No. 5:21-cv-5101

1    Plaintiff Criterion Technology, Inc. ("Criterion") hereby complains and alleges the

2    following against defendants Velodyne Lidar USA, Inc. ("Velodyne") and Fujian Fran Optics

3    Co., Ltd. ("Fran Optics") (collectively, "Defendants") on the basis of personal knowledge as to

4    matters relating to themselves and information and belief as to all other matters:

5                                        **NATURE OF THE CASE**

6        1.      This is an action for trade secret misappropriation under the Defend Trade Secrets

7    Act ("DTSA"), 18 U.S.C. § 1836 *et seq.* and California Uniform Trade Secrets Act ("CUTSA"),

8    and against Velodyne for breach of contract and violations of California Business & Professions

9    Code  § 17200, *et seq*.  Defendants misappropriated and improperly used Criterion's intellectual

10   property, including proprietary manufacturing methods and processes, in order to improve the

11   quality of Defendants' products.  Criterion seeks injunctive relief, damages, and all other

12   appropriate relief to stop Defendants' use, disclosure, and misappropriation of Criterion's trade

13   secrets.

14       2.      Criterion manufactures and sells a variety of high-quality optical components

15   molded out of polycarbonate, acrylic, and optical grade nylon that have a broad range of

16   applications related to, video security, subsea systems, mining and safety, LED lighting, and

17   LiDAR (**Li**ght **D**etection **a**nd **R**anging) devices used in autonomous vehicles.  Founded in 1990,

18   Criterion has made optical lens products for decades, and during that time it has developed a

19   number of trade secrets related to the design and manufacturing of optical lenses.

20       3.      Velodyne is a California-based company that manufactures and sells LiDAR

21   devices for use in autonomous vehicles, among other things.  LiDAR technology works by

22   targeting objects with a laser and measuring the time period that it takes for light to return to the

23   LiDAR device after reflecting off the targeted object.  This technology is useful in autonomous

24   vehicles because it allows for identification and avoidance of obstacles.  LiDAR devices of the

25   type sold by Velodyne include a curved optical lens that surrounds the laser and sensor

26   components of the LiDAR device.

27       4.      In 2015, it became known to Criterion that Velodyne desired to find a new

28   supplier of optical enclosures and improve the overall quality of its optical enclosure

1   components.  At the time, Velodyne's LiDAR "puck" devices relied on curved lens structures

2   that were underperforming.

3        5.     In 2015, Criterion was approached by a company called Precision Optics

4   regarding a potential arrangement whereby Criterion would develop a solution for Velodyne's

5   performance issues concerning optical enclosures in Velodyne LiDAR pucks.  In 2016, Criterion

6   began working directly with Velodyne on development of the optical enclosures.

7        6.     Criterion and Velodyne signed a nondisclosure agreement ("NDA"), and shortly

8   thereafter Criterion submitted a statement of work to Velodyne that disclosed ways in which

9   Criterion could address existing problems and performance issues associated with Velodyne's

10  optical enclosures.  Over the course of almost two years, Criterion continued to provide

11  Velodyne with product samples, test data, technical drawings, and other information as part of its

12  bid to become Velodyne's supplier of optical enclosures.  Throughout this process, Criterion

13  developed and tested numerous iterations of optical enclosures, demonstrating how Criterion's

14  proprietary processes and designs resulted in higher-quality and better performing optical

15  enclosures.

16       7.     After nearly two years of exchanging product samples, testing data, and technical

17  information about the manufacturing of optical enclosures, Velodyne informed Criterion that it

18  had decided to not use Criterion as a supplier.

19       8.     Following termination of the relationship with Velodyne, Criterion became aware

20  that Velodyne had, upon information and belief, misappropriated Criterion's trade secrets and

21  shared them with a third-party supplier.  Velodyne's optical enclosures also changed

22  dramatically.  Specifically, the technical specifications, coating and appearance of the lenses

23  changed to match the specifications and samples Criterion had supplied to Velodyne pursuant to

24  the NDA between the companies.

25                                **THE PARTIES**

26       9.     Plaintiff Criterion is a Georgia corporation with its principal place of business at

27  101 McIntosh Parkway, Thomaston, GA, 30286.

28

10.     Criterion was founded in 1990 with an initial focus on high optical quality enclosures and lenses for use in the closed-circuit-television market.  During this period, Criterion pioneered the use of injection molding engineered plastics and custom tooling and revolutionized the CCTV industry.  In recent years, Criterion has applied this expertise in optical enclosures and lenses into various other industries, including the LiDAR industry.

11.     Defendant Velodyne is a company organized and existing under the laws of Delaware, with a principal place of business located at 5521 Hellyer Avenue, San Jose, CA, 95138.

12.     Defendant Fran Optics is a company organized and existing under the laws of China, with a principal place of business located at No. 25, Standard Workshop, Juyuanzhou, Jinshan Industrial District, Fuzhou, 350002, Fujian, China.

**JURISDICTION AND VENUE**

13.     This action arises under a law of the United States, the DTSA, 18 U.S.C. § 1836 et *seq*.  The Court thus has original jurisdiction pursuant to 28 U.S.C. § 1331 and pursuant to the jurisdictional provisions of the DTSA, found at 18 U.S.C. § 1836(c). Subject matter over any related state law claims is appropriate under 28 U.S.C. § 1367 and the doctrines of ancillary and pendent jurisdiction.  The Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is a complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

14.     Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of California because a substantial part of the acts giving rise to the claim described in this Complaint occurred in this district, Defendants delivered goods produced as a result of misappropriation of plaintiff's trade secrets to this district, and defendant Fran Optics systematically engaged in activities targeted at the district, including by engaging in the business dealings that are the subject of this complaint.  Additionally, defendant Velodyne has its principal place of business within the district, at 5521 Hellyer Avenue, San Jose, CA, 95138. Defendant Velodyne also consented to jurisdiction and venue in the Northern District of

1  California for all disputes arising out of the NDA between Criterion and Velodyne, which is the

2  subject of one of plaintiff's claims.

3  **INTRADISTRICT ASSIGNMENT**

4  15.    Assignment to the San Jose Division of the District is proper pursuant to Civil

5  Local Rule 3-2(c) and (e) because a substantial part of the events or omissions which give rise to

6  the claims in this Complaint have taken place in Santa Clara County, California.

7  **GENERAL ALLEGATIONS**

8  **I.    Criterion's Development and Maintenance of Trade Secrets**

9  16.    The trade secrets at issue relate to Criterion's "know-how" in the manufacture of

10  high-quality optical enclosures.  Criterion's relevant trade secrets include features of tooling

11  designs used to manufacture optical enclosures, product designs and specifications for high

12  transmissivity optical enclosure products, and specific lens coatings, including methods for

13  utilizing those lens coatings.  Each of these trade secrets is owned by Criterion and was

14  developed as a result of Criterion's significant investment in research and development in optical

15  lens products.

16  17.    For over 30 years, Criterion has been developing, improving, and optimizing

17  technology and know-how relating to optical enclosures. These trade secrets conferred a

18  competitive advantage to Criterion in the manufacture and sale of optical enclosures because

19  they permitted Criterion to manufacture optical enclosures with higher transmissivity and

20  durability than its competitors.  As a result, the misappropriated trade secrets derived economic

21  value from being secret and not known to Criterion's competitors.  By avoiding the expense of

22  research and development and instead misappropriating Criterion's trade secrets, Defendants

23  were able to unfairly compete against Criterion and cause substantial injury to Criterion.

24  18.    Criterion has taken reasonable precautions to maintain the secrecy of its trade

25  secrets, including by developing security policies, secure data access and storage, and other

26  forms of data protection.  Specific protection measures include physical security measures to

27  secure Criterion's offices and facilities, including escorted entry into the building, restricting

28  access to Criterion's computer network and use of secure IT systems, prohibiting the

unauthorized transfer of Criterion confidential materials, and use of nondisclosure agreements that prevent the disclosure or misuse of confidential information.  For instance, prior to transmitting trade secret information to Velodyne, Criterion and Velodyne entered into an NDA. Criterion has consistently entered into NDAs with customers and partners to ensure that its trade secret information remains confidential and is not disclosed to the public or to competitors.

19.     As a result of Criterion's diligence in protecting its trade secrets, the trade secrets at issue were not generally known or readily ascertainable through proper means.  Also, due to the nature of the trade secrets, it is highly improbable that the trade secrets could have been determined through reverse engineering.  The trade secrets at issue are not apparent from visual inspection and would not have been ascertained by Defendants in the absence of misappropriation.

**II.     Course of Dealings Between Criterion And Velodyne**

20.     Velodyne began manufacturing LiDAR sensors in or around 2007.  Velodyne's early sensors, such as the HDL-64E (shown below on the far left), operated such that the entire upper structure rotated about the base.  By 2014, the laser/sensor combinations had been reduced in size such that they could fit entirely with a circular compartment—with only the interior components spinning.  These devices, such as the Velodyne VLP-16 (shown below on the far right), are commonly referred to as "pucks."



*Side by side: the HDL-64E, HDL-32E, and LiDAR Puck.*

21.     One component of the pucks is an optical enclosure – shaped as either an optical dome or a ring lens.   Prior to Criterion's involvement, the lenses in Velodyne's LiDAR pucks (*i.e.* the VLP-16 and VLP-32) were under performing, and their lenses required special care and had poor longevity in the harsh environmental conditions—the exterior or automobiles—they were exposed to on a regular basis.

22.     In 2015, Criterion was approached by a company called Precision Optics regarding a potential arrangement whereby Criterion would develop a solution to ongoing performance issues concerning optical enclosures used in Velodyne LiDAR pucks.  In 2016, Criterion began working directly with Velodyne on development of optical enclosures for the Velodyne LiDAR pucks.

23.     On November 16, 2016, Criterion and Velodyne entered into an NDA.  The NDA recognized that its purpose was to explore a "business opportunity of mutual interest" and that, connection with that opportunity, each party would disclose confidential and proprietary information.  The NDA was clear that the recipient of any confidential information would not disclose such information to third-parties or use such information "except to evaluate and engage in discussions concerning the Opportunity."

24.     The NDA defined "Confidential Information" broadly to include, inter alia, "research, product plans, products, services, equipment, customers, markets, software, inventions, discoveries, ideas, processes, designs, drawings, formulations, specifications, product configuration information, marketing and finance documents, prototypes, samples, data sets, and equipment."   The NDA also specifically prohibited reverse engineering, disassembling, or decompiling any prototypes or samples provided pursuant to the NDA.

25.     One week after entering the NDA agreement, on November 23, 2016, Criterion prepared and submitted a written statement of work to Velodyne to address issues with the performance of Velodyne optical enclosures.  Within the statement of work, Criterion disclosed and provided for the use of Criterion's trade secrets to improve Velodyne's optical enclosers and address problems associated with the enclosures, including Criterion's proposed use of certain lens coatings.  Criterion also engaged a third-party supplier of durable lens coatings, SDC

1   Technologies Inc. ("SDC"), in order to execute certain of Criterion's ideas for improving

2   Velodyne's optical enclosures.  Criterion executed an NDA with SDC on February 1, 2017.

3        26.     Over the course of almost two years, Criterion and Velodyne exchanged molded

4   pieces, test data, technical drawings, and other information as part of Criterion's bid to be

5   Velodyne's supplier of LiDAR enclosures.  During that time, Criterion developed and tested

6   numerous iterations of optical enclosures, demonstrating how Criterion's trade secrets resulted in

7   higher-quality optical enclosures for Velodyne's LiDAR applications.  The samples Criterion

8   provided included enclosures with specific surface characteristics and the optical lens coating

9   that Criterion developed.  Criterion also provided Velodyne with information concerning stresses

10   in the optical enclosure, root cause analysis of Velodyne's performance issues, and Criterion's

11   tooling designs and methods for addressing such problems.

12        27.     As part of the information exchange, Velodyne requested meetings between

13   Criterion and Velodyne, to occur on August 8, 2018 at Velodyne's headquarters in California.

14   Right up until this meeting, Velodyne employees continued to seek information from Criterion

15   about its developments in the optical enclosure project, and they did not indicate that Criterion

16   was no longer under consideration as Velodyne's supplier.  At the in-person meeting, a Velodyne

17   employee informed Criterion's President and CEO, Mr. Chris Mulvey, that Criterion was no

18   longer under consideration as a potential supplier to Velodyne.  On information and belief, this

19   was because Velodyne had already established a supplier relationship with Fran Optics, and was

20   already receiving parts from Fran Optics.

21        28.     After the in-person meeting, Velodyne indicated to Criterion via email that it no

22   longer wanted information or product samples from Criterion.  On September 24, 2018,

23   Velodyne confirmed to Criterion that it would not be moving forward with Criterion.  On

24   information and belief, this was because Velodyne had already established a supplier relationship

25   with Fran Optics.

26        29.     On information and belief, during the same time period that Velodyne had been

27   pumping Criterion for information, including the period right up until the in-person meeting,

28

1  Velodyne had already decided to use a different supplier and had engaged in dealings and

2  received parts from that supplier.

3  **III.      Defendants Misappropriation Of Criterion's Trade Secrets**

4        30.      Following termination of the relationship with Velodyne, Criterion became aware

5  that Velodyne had violated the terms of the NDA and misappropriated its trade secrets, including

6  by, upon information and belief, disclosing the trade secrets to Velodyne's supplier.

7        31.      After the relationship terminated, Criterion discovered that Velodyne was selling

8  products featuring new optical enclosures having specifications vastly different from Velodyne's

9  lens specifications prior to engaging with Criterion.  Indeed, Velodyne updated the specification

10  of its optical enclosures to precisely correspond to the use of the trade secrets disclosed by

11  Criterion.

12        32.      Further, Fran Optics, who on information and belief serves as Velodyne's supplier

13  of optical products, began advertising on its website an optical enclosure that evidenced use of

14  Criterion's trade secrets.



26        33.      The specific optical enclosure products, and product specifications, offered by

27  both Velodyne and Fran Optics were only possible because of three specific categories of trade

28  secrets Criterion shared with Velodyne under protection of the NDA.

34.     First, Criterion shared proprietary and confidential designs for tooling that would enable production of optical enclosures, including optical enclosures with better characteristics and higher light transmissivity.  In a meeting at Velodyne's headquarters on April 10, 2017, Criterion's President and CEO Mr. Chris Mulvey met with two Velodyne employees for approximately 2 hours to discuss the optical enclosure project.  During that meeting, Mr. Mulvey showed the Velodyne employees a preliminary design for the tool that could be used to make the Velodyne enclosures.  Subsequently, on August 18, 2017, Criterion presented a document titled "Root Cause Analysis" to Velodyne describing Criterion's analysis of recent testing failures.  In that document, Criterion described an updated tool design reflecting Criterion's trade secrets.  And, Criterion referenced and discussed the tool designs in multiple subsequent communications.

35.     Second, Criterion shared part designs (and product samples) with Velodyne that revealed Criterion's designs and target specifications for optical enclosures with high transmissivity.  For instance, Criterion's part design for the Velodyne LiDAR puck enclosure, including target specifications for high optical transmissivity, was disclosed to Velodyne on November 23, 2016 in Criterion's Statement of Work.  And, subsequent product samples were shared with Velodyne.

36.     Third, Criterion shared with Velodyne the idea to use specific lens coatings and methods for utilizing those specific lens coatings.  The November 23, 2016 Statement of Work Criterion provided to Velodyne disclosed designs incorporating the coatings to Velodyne.  Criterion worked with a third-party, SDC, to refine and test the design and implementation of a blue-tinted coating specifically for the Velodyne optical enclosures.  Criterion then further disclosed the blue-tinted coating, including its formulation and methods for utilizing the coating, to Velodyne on or around January of 2018.

37.     Each of the three categories of trade secrets described above were transmitted to Velodyne pursuant to the protections of the NDA.  On information and belief, Velodyne then misappropriated the trade secrets by transferring them to its supplier.  On information and belief,

1   that supplier was Fran Optics who then used the trade secrets to construct optical enclosure

2   products that it, in turn, supplied to Velodyne.

3          38.      The physical appearance and attributes of the Fran Optics and Velodyne optical

4   enclosures are evidence that the Velodyne and Fran Optics products incorporate Criterion's trade

5   secrets.  As but one example, the following product photos demonstrate how Velodyne replaced

6   its previous yellow-tinted optical enclosure with one featuring the blue-tinted coating disclosed

7   to Velodyne by Criterion:

8

9               **Old Velodyne LiDAR Puck**                    **New Velodyne LiDAR Puck**

10
11            
12
13
14
15

16          39.      Upon information and belief, the updated specifications and characteristics of the

17  Velodyne and Criterion products would not have been achieved in any economically feasible

18  way without the incorporation of each of the three categories of Criterion trade secrets described

19  above.

20  **IV.      Defendants Conduct Has Substantially Injured Criterion**

21          40.      Defendants actions have substantially injured Criterion in multiple ways.

22  Defendants' actions have caused Criterion to lose control of its own trade secrets, and they have

23  devalued the trade secrets by making them available to Criterion's competitors.  Criterion

24  expended decades developing know-how related to its production methods for optical lenses and

25  enclosures, and it expended significant research and development resources over the course of

26  almost two years working specifically on the Velodyne optical enclosures.  Because of

27  Defendants' actions, Criterion was deprived of the competitive advantages conferred by this

28  work and experience, in both the LiDAR industry and other related industries involving optical

enclosures, and was forced to compete against Fran Optics, and potentially other suppliers, that were using Criterion's trade secret information.

41.     Defendants were able to free ride on Criterion's investments without having invested any resources to acquire the information.  Defendants have used the trade secret and confidential information to manufacture products, export such products to the United States, offer the products for sale, and sell products embodying Criterion's trade secrets.  Defendants would not have been able to engage in these actions, which directly compete with Criterion, without misappropriating Criterion's information.  Furthermore, because of their misappropriation, Defendants have been able to lower their cost to design and develop high quality optical enclosures, enabling them to complete directly against Criterion, which has caused Criterion to lose sales, disrupted Criterion's customer relationships, and compromised Criterion's ability to sell products at prices that ensure a proper return on its investments.

42.     The harm caused by Defendants, including the degradation in value of Criterion's trade secrets and the loss of control of Criterion's proprietary information, cannot be fully compensated by monetary remedies.  The harm to Criterion is irreparable and will only worsen if Defendants are allowed to continue their misappropriation.  In fact, when entering into an NDA with Criterion to ensure protection of Criterion's proprietary information, defendant Velodyne agreed that any unauthorized disclosure or use of the information "may cause irreparable injury to [Criterion], entitling [Criterion] to seek injunctive relief in addition to all legal remedies."

## FIRST CAUSE OF ACTION
### MISAPPROPRIATION OF TRADE SECRETS UNDER
### THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836, *et seq.*)

### (Against All Defendants)

43.     Criterion hereby incorporates by reference Paragraphs 1 through 42, inclusive, as if set forth fully herein.

44.     Criterion owns and possesses trade secret information, as alleged and described above, including technical and engineering information related to the design and production of optical enclosure products.

45.     Criterion's trade secret information relates to products sold and used in, or intended for use in, interstate or foreign commerce.  Specifically, Criterion's trade secrets relate to the design and manufacture of optical enclosures, including those used in LiDAR devices.  Such LiDAR devices are sold or distributed throughout the United States by defendant Velodyne, imported into the United States by defendant Fran Optics, and used throughout the United States, including in interstate travel.

46.     Criterion's trade secrets are not generally known to the public.  They were derived through extensive industry experience, as well as research and development efforts by Criterion, and Criterion has taken reasonable measures to ensure that the trade secrets remain confidential, including by protecting its trade secrets from disclosure using NDAs.  The trade secret information derives independent value from not being publicly known, including because it allows Criterion to design and manufacture distinct and superior optical products.

47.     In violation of 18 U.S.C. § 1836, *et seq.*, Defendants willfully misappropriated Criterion's confidential and proprietary information and converted the same for their own use. Defendant Velodyne solicited and collected trade secret information from Criterion and then, upon information and belief, unlawfully disclosed such information to its supplier of optical components.  Further, defendant Fran Optics, who on information and belief acted as Velodyne's supplier of optical components, received such trade secret information from Velodyne with reason to know that it had been acquired through improper means, and then, without authorization, knowingly used Criterion's proprietary information to produce products.

48.     Defendants' misappropriation was willful, malicious, and fraudulent.  Defendants acted in concert in misappropriating Criterion's trade secrets and are jointly and severally liability for any resulting damages.

49.     Disclosure or use by competitors of Criterion's trade secret information is harmful to Criterion because it deprives Criterion of the competitive advantage derived from its research and development activities and extensive experience in the market, and because it allows Criterion's competitors to gain an advantage by avoiding expending time and resources to develop competing products and technologies.

50.     Defendants are still in possession of Criterion's trade secret information and continue to use such information.  If Defendants' conduct is not remedied or stopped, then they will continue to unlawfully use the trade secrets to the detriment of Criterion.

51.     Because Criterion's remedy at law is inadequate, Criterion seeks, in addition to damages, permanent injunctive relief to recover and protect its trade secret information.

52.     Criterion has been damaged by all of Defendants actions alleged herein, and it is entitled to an award of exemplary damages and attorneys' fees.

**SECOND CAUSE OF ACTION**
**MISAPPROPRIATION OF TRADE SECRETS UNDER**
**CALIFORNIA UNIFORM TRADE SECRETS ACT (Cal. Civ. Code § 3426, _et seq._)**

**(Against All Defendants)**

53.     Criterion hereby incorporates by reference Paragraphs 1 through 52, inclusive, as if set forth fully herein.

54.     As alleged above. Criterion owns and possesses trade secret information, as that term is defined in Cal. Civ. Code § 3426.1.  Specifically, Criterion's trade secrets relate to the design and manufacture of optical enclosures, including those used in LiDAR devices. Criterion's trade secrets are not generally known to the public.  They were derived through extensive industry experience, as well as research and development efforts by Criterion.  The trade secret information derives independent value from not being publicly known, including because it allows Criterion to design and manufacture distinct and superior optical enclosure products and lenses.  And, Criterion has taken reasonable measures to ensure that the trade secrets remain confidential and secret, including by protecting the information from disclosure using NDAs.

55.     In violation of Cal. Civ. Code § 3426, Defendants willfully misappropriated Criterion's confidential and proprietary information through improper means.  Defendant Velodyne solicited and collected trade secret information from Criterion, which it knew that it had a duty to maintain the secrecy of, and then, upon information and belief, Velodyne unlawfully disclosed such information to its supplier of optical components.  Further, defendant

Fran Optics, who, upon information and belief, acted as Velodyne's supplier of optical

components, received such trade secret information from Velodyne with the knowledge that such

information was confidential, and, without authorization, knowingly used Criterion's proprietary

information to produce optical products.

56.     Defendants' misappropriation was willful, malicious, and fraudulent.  Defendants

acted in concert in misappropriating Criterion's trade secrets and are jointly and severally

liability for any resulting damages.

57.     Disclosure or use by competitors of Criterion's trade secret information is harmful

to Criterion because it deprives Criterion of the competitive advantage derived from its research

and development activities and extensive experience in the market, and because it allows

Criterion's competitors to gain an advantage by avoiding expending time and resources to

develop competing products and technologies.

58.     Criterion seeks all available monetary damages, special damages and awards

arising from the misappropriation, including all forms of damages available pursuant to Cal. Civ.

Code § 3426.3.

59.     Defendants are still in possession of Criterion's trade secret information and

continue to use such information.  If Defendants' conduct is not remedied or stopped, then they

will continue to unlawfully use the trade secrets to the detriment of Criterion.  Accordingly,

Criterion seeks, in addition to damages, injunctive relief pursuant to Cal. Civ. Code § 3426.2.

## THIRD CAUSE OF ACTION
### BREACH OF CONTRACT

**(Against Defendant Velodyne)**

60.     Criterion hereby incorporates by reference Paragraphs 1 through 59, inclusive, as

if set forth fully herein.

61.     On November 16, 2016, Criterion and Velodyne entered into an agreement

entitled Mutual Non-Disclosure Agreement.

62.     The NDA arose because Criterion and Velodyne were exploring a "business

opportunity of mutual interest" and, in connection with that opportunity, each party would need

1    to disclose confidential and proprietary information.  The agreement was to ensure that such

2    confidential information was not further disclosed to third-parties or otherwise unlawfully used.

3    And, the NDA's protections against disclosure were in effect at all relevant times and remain in

4    effect.

5          63.    Paragraph 3 of the NDA prohibited the recipient of any "Confidential

6    Information" from disclosing such information to third-parties or using such information "except

7    to evaluate and engage in discussions concerning the Opportunity."  Paragraph 3 also specifically

8    prohibited reverse engineering, disassembling, or decompiling any prototypes or samples

9    provided pursuant to the NDA.

10         64.    Paragraph 4 of the NDA mandated that the recipient of "Confidential

11   Information" would take reasonable measures to protect the secrecy of such information and

12   would notify the discloser of such information of any unauthorized use of disclosure.

13         65.    Pursuant to the NDA, the parties exchanged Confidential Information, including

14   the provision by Criterion to Velodyne of research and testing data, product plans and designs,

15   product samples, tooling and production information, product specifications, and other ideas and

16   discoveries.

17         66.    Criterion did all of the things that the NDA required it to do, including

18   maintaining the secrecy of any Confidential Information provided to it by Velodyne, and all

19   conditions precedent for the contract have occurred or been performed.

20         67.    Defendant Velodyne failed to perform under the NDA, including by breaching

21   Paragraphs 3 and 4 of the NDA.  Specifically, upon information and belief, Velodyne disclosed

22   Criterion's Confidential Information to third-parties, failed to take reasonable measures to

23   maintain the secrecy of Criterion's Confidential Information, used Criterion's Confidential

24   Information for a purpose other than to evaluate "the Opportunity," and engaged in or

25   encouraged a third-party to engage in efforts to reverse engineer Confidential Information

26   provided by Criterion.

27         68.    Criterion was harmed, including because the secrecy of its proprietary

28   information was not adequately maintained, and because Criterion's competitors gained access to

COMPLAINT                                    15                        Case No. 5:21-cv-5101

1    Criterion's proprietary and secret information.  Velodyne's breach was a substantial factor in

2    causing such harm.

3         69.    Criterion seeks all available legal remedies, monetary damages, special damages

4    and awards arising from the breach.

5         70.    The parties to the NDA recognized that any breach of the NDA "may cause

6    irreparable injury to Discloser, entitling Discloser to seek injunctive relief in addition to all legal

7    remedies."  Because it has suffered such irreparable injury, Criterion seeks injunctive relieve in

8    addition to all available legal remedies.

9

10        **FOURTH CAUSE OF ACTION**
     **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ*.**

11        **(Against Defendant Velodyne)**

12        71.    Criterion hereby incorporates by reference Paragraphs 1 through 70, inclusive, as

13   if set forth fully herein.

14        72.    Business and Professions Code § 17200 *et seq*. prohibits any unlawful, unfair, or

15   fraudulent business act or practice.

16        73.    Defendant Velodyne engaged in unlawful, unfair and fraudulent business act, as

17   described above, including, inter alia, by falsely representing to Criterion that it wished to enter

18   into a business relationship with Criterion and continually inciting Criterion to disclose

19   proprietary information over the course of almost two years, including after Velodyne had

20   decided to pursue a supplier relationship with other parties instead of Criterion.

21        74.    As described above, representatives of Velodyne continued to request and receive

22   data and samples from Criterion via email and telephonic conversations up until the point in time

23   when parties engaged in an in-person meeting in August of 2018 to discuss the project.  During

24   this time period, Velodyne employees communicating with Criterion never mentioned their

25   dealings with other part suppliers, that Criterion was no longer under consideration as

26   Velodyne's supplier, or that Velodyne had moved forward with another supplier instead of

27   Criterion.  Upon information and belief, Velodyne was in discussions with other part suppliers at

28   the same time as discussing the project with Criterion and had even selected another supplier

over Criterion while still engaged in discussion with Criterion, which Velodyne should have disclosed to Criterion.  This material omission induced Criterion to continue sharing its confidential information with Velodyne, which Criterion would not have done without Velodyne's representations and omissions.  Upon information and belief, Velodyne engaged in this course of conduct in order to gain proprietary information from Criterion so that it could then use the information and disclose the information to Velodyne's other partners.  In addition to being fraudulent, this course of conduct was also unfair in that it was malicious, immoral, unethical, oppressive, and unscrupulous.

75.     For the reasons stated above, Velodyne's conduct caused and continues to cause substantial injury to Criterion.  Criterion seeks all damages and civil penalties available pursuant to Business and Professions Code § 17206 and California Civil Code § 3294, as well as injunctive relieve pursuant to Business and Professions Code § 17203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that judgment be entered against Defendants, jointly and severally, as follows:

1.     Judgement in Plaintiff's favor against Defendants on all causes of action alleged herein;

2.     For a permanent injunction restraining Defendants, and their agents, employees, successors and assigns, and all persons acting in concert with them, from maintaining possession of, using, disclosing or further misappropriating any of Criterion's trade secrets of confidential information;

3.     For an order requiring Defendants to certify, in writing and under oath, that they have returned and/or destroyed all Criterion trade secrets or confidential information in their possession, and any other documents or objects that contain or reflect such information;

4.     For all compensatory, consequential, and actual damages available under the law, and Defendants' profits unjustly obtained and/or a reasonable royalty, with interest thereon as provided by law;

5.     For all exemplary and punitive damages available under the law;

6.    For pre- and post-judgment interest on all damages;

7.    For all attorneys' fees and costs of suit provided by law; and

8.    For such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs respectfully request a jury trial in this action under Federal Rules of Civil Procedure 38 and 39 on all issues so triable.

DATED:  July 1, 2021                     KING & SPALDING LLP


By:     _/s/ J. Blake Cunningham_____
        Jason B. Cunningham

        J. BLAKE CUNNINGHAM
        (Cal. Bar No. 261559)
         bcunningham@kslaw.com
        50 California Street, Suite 3300
        San Francisco, CA 94111
        Telephone: (415) 318-1200
        Facsimile: (415) 318-1300


        JEFFREY M. TELEP (*pro hac vice* application to be submitted)
         jtelep@kslaw.com
        J. MICHAEL TAYLOR (*pro hac vice* application to be submitted)
         jmtaylor@kslaw.com
        BRIAN HILL (*pro hac vice* application to be submitted)
         bhill@kslaw.com
        KING & SPALDING LLP
        1700 Pennsylvania Avenue, NW, 2nd Floor
        Washington, DC 20006-4707
        Telephone: (202) 737-0500
        Facsimile: (202) 626-3737

COMPLAINT                          18                    Case No. 5:21-cv-5101

1

CHRISTOPHER C. CAMPBELL (*pro hac vice*
application to be submitted)
  ccampbell@kslaw.com
KING & SPALDING LLP
1650 Tysons Blvd
Suite 400
McLean, VA 22102
Telephone: (703) 245-1000
Facsimile: (703) 245-9900

2

3

4

5

6

BRITTON F. DAVIS (*pro hac vice* application
to be submitted)
  bfdavis@kslaw.com
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO 80202
Telephone: (720) 535-2300
Facsimile: (720) 535-2400

7

8

9

10

11

JOSEPH D. ENG (*pro hac vice* application to
be submitted)
  jeng@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

12

13

14

15

16

Attorneys for Plaintiff
CRITERION TECHNOLOGY, INC.

17

18

19

20

21

22

23

24

25

26

27

28